(281 P.3d 1126)
No. 106,292

In the Matter of the Marriage of JEFFREY E. HUTCHISON, *Appellee*, and KAREN L. WRAY, f/k/a KAREN L. HUTCHISON, *Appellant*.

Opinion filed June 29, 2012.

*James E. Rumsey*, of Lawrence, for appellant.

*Jeffrey E. Hutchison*, appellee pro se.

*Milfred D. Dale*, of Law Offices of Bud Dale, of Topeka, for *amicus curiae* Dr. Milfred D. Dale.

Before GREENE, C.J., STANDRIDGE and ARNOLD-BURGER, JJ.

ARNOLD-BURGER, J.: Based upon a case manager's recommendations to the court, Karen L. Wray lost residential custody of her minor child without a hearing. She asserts that the district court's actions deprived her of due process of law. We agree. Accordingly, we reverse the district court's decision and remand the case to it with directions to conduct an evidentiary hearing on the case manager's recommendations.

### FACTUAL AND PROCEDURAL HISTORY

This appeal involves an on-going dispute over child custody between former spouses Jeffrey Hutchison and Karen Wray. Hutch-

ison and Wray were married in 2000. During the marriage, the parties had one child, E.H, who was born in 2001.

In 2002, Hutchison filed a petition for divorce in the District Court of Douglas County, Kansas. The district court found that Hutchison and Wray were irreconcilably incompatible and entered a decree of divorce. The court's divorce decree provided that issues regarding child custody, parenting time, and support would be resolved at subsequent hearings.

The parties eventually submitted an agreed-upon parenting plan which was approved by the district court. Under that agreement, they were awarded joint legal custody of E.H. Wray was granted residential custody, and Hutchison was granted weekly parenting time. The parenting plan also enumerated a shared custody schedule for holidays, birthdays, and vacations. Finally, the parenting plan provided that Hutchison and Wray would mediate any future disputes involving custody, visitation, or other matters involving E.H. should the parties be unable to come to a mutually satisfactory agreement. The district court appointed Susan Kraus as mediator.

In 2004, Hutchison filed a motion requesting that the district court appoint a case manager and order the parties to participate in case management. The district court ordered the parties to participate in further mediation with Susan Kraus. The district court also provided that it would order Hutchison and Wray to participate in case management should Kraus recommend such action to the court.

In 2007, Kraus notified the district court that mediation was not working, that the continued conflict was damaging to E.H., and that the parties should participate in case management. The court accepted Kraus' recommendations and ordered Hutchison and Wray to participate in case management. The court appointed Cheryl Powers as the case manager.

Over the next 4 years, motions were filed by Wray seeking the removal of Powers as the case manager, requesting that the court rescind its previous order authorizing case management, and objecting to Powers' recommendations. The court denied Wray's motions and adopted Powers' recommendations.

On February 7, 2011, prompted by notice that Wray was getting married and planned to move to Marion, Kansas, with E.H., Powers set up a meeting with Wray, her fiancé, and Hutchison. No agreement was reached as to the residential custody of E.H. subsequent to the move. Accordingly, Powers submitted recommendations for consideration by the district court. Powers recommended that the district court change primary residential custody of E.H. from Wray to Hutchison, with both parents retaining joint legal custody. Powers noted that due to Wray's relocation, it would be in E.H.'s best interest to remain with Hutchison because this would provide her with more stability and consistency. She reasoned that Wray has had a history of alienating E.H. from Hutchison and this alienation would only increase if she were allowed to move away with the child. Powers also recommended that Wray receive the parenting time that the district court awarded Hutchison under its March 2009 order. Powers recommended that the change of residential placement take place in 10 days.

In response to Powers' February 2011 recommendations, Wray filed a written notice objecting to those recommendations and requesting that the trial court remove Powers as case manger. Wray also filed a motion for change of custody and a proposed parenting plan. Finally, Wray filed motions requesting an ex parte injunction and the appointment of a guardian ad litem (GAL) for E.H. Wray requested a hearing and in regard to her motion for an injunction, she requested that the district court refrain from ruling on Powers' recommendations until it held a hearing on the issues of custody, parenting time, and removal of Powers as case manager. Wray's objections challenged as untruthful and incomplete numerous statements made by Powers in her recommendations. Powers replied to Wray's motions by filing a follow-up report that responded to the assertions and requests made in Wray's motions. Powers also submitted an amended report which proposed that the trial court order the implementation of her February 7 recommendations effective March 10, 2011 (instead of February 17, as she had previously recommended). Powers also noted her objection to her own removal and to the appointment of a GAL.

On March 8, 2011, without a hearing, but with the case manager's recommendations and written report before it, as well as the specific objections raised by Wray, the district court entered its decision. The district court addressed several of Wray's stated concerns in its order. The court focused on the fact that Wray was getting married and moving from Lawrence to Marion, Kansas. It found this to be a significant and substantial change in circumstances. The court noted the case manager's concern that Hutchison would be more likely to allow the child to maintain a relationship with Wray, than Wray would be to allow the child to maintain a relationship with Hutchison "due to [Wray's] continuing anger at [Hutchison]," concerns the court noted were shared by the child's psychologist. The court ordered that Hutchison and Wray continue to share joint legal custody and awarded Hutchison primary residential custody of E.H. However, the court made no rulings as to Wray's motions requesting the appointment of a GAL or the removal of Powers as case manager.

Wray subsequently filed a motion to reconsider, requesting that the court rescind its March 8 adoption of the case manager's recommendations, schedule a hearing on Wray's motions, and appoint a GAL for E.H.

Wray's motion to reconsider was initially set for a hearing to be held on May 3, 2011. However, approximately 1 week before the hearing, the district court entered a written order denying Wray's motion and cancelling the hearing scheduled for May 3. Wray appeals from the order denying her motion for reconsideration and denial of a hearing. Although in her appellate brief, Wray raises several concerns alleging retaliatory conduct associated with Powers' subsequent recommendations after residential custody had been changed, those recommendations and associated orders were not appealed and therefore will not be addressed herein.

Wray raises two arguments on appeal. First, she contends that the district court violated her due process rights under the Fifth and Fourteenth Amendments to the United States Constitution by declining to hold an evidentiary hearing on her motion to remove the case manager, her objections to the case manager's recommendations, and her motion to reconsider. See also Kan. Const.

Bill of Rights, § 18. Next, she argues that Judge Pokorny was required to recuse herself from hearing the case. We will address each issue and include additional factual background as necessary.

## WRAY'S DUE PROCESS CLAIM

Wray argues that the district court's adoption of the case manager's recommendations infringed on her fundamental right to make decisions regarding the care, custody, and control of E.H. She contends that when a case manager's recommendations propose a serious alteration in the custody arrangement between two parents, due process requires that a trial court hold a hearing before making a decision on the case manager's recommendations.

Whether a procedure employed comports with due process is a question of law over which an appellate court exercises unlimited review. See *Hogue v. Bruce*, 279 Kan. 848, Syl. ¶ 1, 113 P.3d 234 (2005).

The fundamental requirements of procedural due process are notice and the opportunity to be heard at a meaningful time and in a meaningful manner. *State v. Moody*, 282 Kan. 181, 188, 144 P.3d 612 (2006). In reviewing a procedural due process claim, a reviewing court must first determine whether a protected liberty or property interest is involved. If such an interest is implicated, then a court must next determine the nature and extent of the process due. *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007).

*A protected liberty interest is at stake.*

It is well established that a parent's right to make decisions regarding the care, custody, and control of his or her child is a fundamental liberty interest protected by the Fourteenth Amendment. Before a parent can be deprived of his or her right to the care, custody, and control of his or her child, he or she is entitled to due process of law. *In re J.D.C.*, 284 Kan. at 166.

Wray's claim implicates a protected liberty interest because the district's court adoption of Powers' recommendations altered the residential custody arrangement and parenting time schedule between Wray and Hutchison thereby impacting Wray's right to the care, custody, and control of E.H. Therefore, the first step in Wray's procedural due process claim has been met.

*The nature and extent of the process due.*

A due process violation occurs only when a party is able to establish that he or she was denied a specific procedural protection to which he or she was entitled. *In re J.D.C.*, 284 Kan. at 166. The concept of due process is flexible in that not all situations calling for procedural safeguards call for the same kind of procedure. *In re Petition of City of Overland Park for Annexation of Land*, 241 Kan. 365, 370, 736 P.2d 923 (1987).

In order to determine the nature and extent of the procedural protections that an individual is entitled to receive, a court applies the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *State v. Wilkinson*, 269 Kan. 603, 609, 9 P.3d 1 (2000). Under that test, a reviewing court weighs the following factors: (1) the individual interest at stake; (2) the risk of erroneous deprivation of the interest through the procedures employed and the probative value, if any, of additional or substitute procedural safeguards; and (3) the State's interest in the procedures used, including the fiscal and administrative burdens that any additional or substitute procedures would entail. *In re J.D.C.*, 284 Kan. at 166-67.

We turn first to a description of the statutory procedures implicated in this case and thereafter consider the factors bearing upon the constitutional adequacy of these procedures by applying the *Mathews* factors.

*The case management process.*

Case management is a tool to be used to facilitate "negotiation of a plan for child custody, residency or visitation or parenting time." K.S.A. 23-1001. The court may order case management, as it did in this case, when confronted with contested child custody, visitation, or parenting time issues and the conflict between the parties is so great that other neutral dispute resolution services, in this case mediation, have tried and failed to resolve the dispute. K.S.A. 23-1002. When the parties are unable to reach an agreement, the case manager must recommend a resolution to the court. K.S.A. 23-1003(d)(2). When those recommendations involve permanent issues such as designation of custody, primary residency,

or child support, the recommendations must be filed with the court within 10 working days of their receipt. K.S.A. 23-1003(d)(5). If a parent disagrees with the recommendations, he or she must file a motion with the court requesting that the court review the recommendations. Upon the filing of an objection, the case manager is then required to explain to the court, either by report or testimony, the reasons for the recommendations. The court then enters an order regarding the recommendations. K.S.A. 23-1003(d)(6).

Therefore, under the plain language of the case management statute, no hearing is required. The judge may simply review the motion and a written report from the case manager. It does not prohibit a hearing, but it does not require one either. The decision to grant a hearing is left to the sound discretion of the judge. Likewise, the recommendations from the case manager are simply advisory in nature and the district court is not required to accept the recommendations.

With the statutory procedure in mind, we turn to an examination of the *Mathews* factors.

*The individual interest at stake.*

The first *Mathews* factor considers the individual interest at stake. *Mathews*, 424 U.S. at 339-40.

"[O]ther than the right to personal freedom, there may be no private right valued more highly or protected more zealously by the courts than the right of a parent to the custody and control of his or her children. It follows that in the balancing test, the private rights affected by governmental action are very significant and are entitled to the highest protection from unwarranted governmental action." *In re of J.L.*, 20 Kan. App. 2d 665, 671, 891 P.2d 1125, *rev. denied* 257 Kan. 1092 (1995).

As noted previously, the district court's adoption of Powers' recommendations implicated Wray's liberty interest in the care, custody, and control of E.H. because it altered the custodial arrangement that was previously in place. Specifically, Powers' recommendations shifted primary residential custody of E.H. from Wray to Hutchison and also recommended that Wray receive a reduced amount of parenting time.

However, as the *Mathews* court noted, in reviewing the adequacy of a specific set of procedures, a court may consider the "degree of potential deprivation" that results from the application of those procedures. *Mathews*, 424 U.S. at 341. Due process of law does not require a hearing " 'in every conceivable case of government impairment of a private interest.' " *Stanley v. Illinois*, 405 U.S. 645, 650, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). Certainly if the case manager recommended a minor change in parenting time or recommended the child see a particular counselor rather than a counselor chosen by the parent, although such recommendations certainly impact a parent's care and control, the degree of deprivation is slight and the resulting due process required is less. Due process requires that anyone *materially affected* by the actions of the court in a legal proceeding is entitled to a full and ample opportunity to be heard. *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022, 1027, 686 P.2d 171 (1984).

In this case, the adoption of Powers' recommendations did not completely deprive Wray of the care, custody, and control of E.H. She still maintained joint legal custody. Nevertheless, the adoption of a case manager's recommendations changing residential custody do materially affect a parent's liberty interest in his or her child, and the existence of that potentiality warrants allowing the affected parent the opportunity to challenge a case manager's recommendations at an evidentiary hearing on the matter. Accordingly, the first *Mathews* factor weighs in favor of requiring a hearing when a parent objects to a case manager's recommendations that impact significant parenting rights such as legal custody, residential custody, or significant changes in parenting time.

*The risk that the existing procedures will result in the deprivation of a protected right.*

The second *Mathews* factor assesses the risk of existing procedures resulting in the erroneous deprivation of a protected liberty interest and the probative value of additional or substitute procedures. *Mathews*, 424 U.S. at 343. As previously noted, the case management statute does not require a hearing when a parent objects to the case manager's recommendations or when a modifi-

cation of custody is sought, regardless of the overall impact of the recommendations on the parent's constitutionally protected liberty interest in the care, custody, and control of his or her child. If a party disagrees with a case manager's recommendations, the objecting party must file a motion for a review. Once a motion for review is filed, the case manager is required to explain and support the recommendations either by report or testimony. The trial court has the option to receive the case manager's reasons supporting the recommendations through in-court testimony or to receive those reasons via a written report.

If the trial court receives a case manager's reasons supporting his or her recommendations in report form, then the court is faced with the possibility of making a significant child custody decision based solely upon the information received in that report. Moreover, when the case manager's report makes recommendations which rely upon material facts that are either not supported by specific factual references or are specifically disputed by the objecting party, the risk of an erroneous deprivation of a constitutional right increases significantly. Therefore, due process requires that the objecting party be given an adequate opportunity to contest or rebut the case manager's claims and recommendations through cross-examination and the presentation of witnesses. Giving parents the opportunity to challenge the reasons for a case manager's recommendations in such circumstances would provide additional probative value and would generate useful information that the trial court can consider in making a final determination on the case manager's recommendations.

*Mathews* supports this conclusion. In considering this factor, the Supreme Court noted that an evidentiary hearing is not likely to be an effective prophylactic measure to safeguard against an erroneous deprivation of a protected liberty interest when the resolution of the dispute simply turns on the consideration of objective and scientific evidence. *Mathews*, 424 U.S. at 344-45. In contrast, "where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). Determining what type of child custody

arrangement is in the best interests of a child requires a court to engage in a heavily fact-driven analysis. See K.S.A. 60-1610(a)(3)(B) (listing the various factors that a trial court considers in deciding issues regarding child custody, residency, and parenting time); K.S.A. 60-1620 (listing the factors the court must consider in modifying legal custody, residency, child support, or parenting time based upon a change of residency); K.S.A. 60-1628 (requiring that parties seeking to modify a final order regarding custody or residential placement include with specificity all known factual allegations which constitute the basis for a change and providing for a trial on the factual issues if a prima facie case is pled).

Finally, consultation of related provisions of the Kansas Family Law Code offer insight concerning a district court's obligation to hold a hearing in a case in which the parties cannot agree on child custody issues. For instance, in cases in which custody, residency, visitation rights, or parenting time is originally contested, K.S.A. 60-1615(a) authorizes a trial court to order an investigation and report to aide it in determining the appropriate outcome. After the report is prepared, the trial court must make the report available to all the parties before conducting the hearing to resolve any issues. K.S.A. 60-1615(c). The commissioning of a report to help clarify issues regarding child custody, residency, and parenting time does not function as a substitute for a hearing; the trial court must still have a hearing to determine any outstanding custody, residency, or parenting time issues, and the report functions as one source of information the court can consult to make a determination that is in the best interests of the child.

Likewise, when a parent seeks to modify a final child custody or residential placement order, he or she is required to establish that there has been a material change in circumstances. If the parent is able to meet this burden, the statute anticipates the necessity of a trial on the factual issues presented. See K.S.A. 60-1628(a).

*The State's interest in the procedure used.*

The third *Mathews* factor takes into account the State's interest in the procedures used and also considers the fiscal and administrative burdens that would result if additional or substitute pro-

cedures were employed. *Mathews*, 424 U.S. at 347. Case management was designed to provide a nonjudicial method of resolving on-going disputes between parents regarding child custody, parenting time, and other issues normally involved in custody disputes. The legislature specified certain circumstances in which case management may be appropriate; those circumstances include cases in which both parents have been unable to resolve a dispute by participating in alternative dispute resolution services and in cases involving a litigious party or parties. K.S.A. 23-1002(b)(1) and (3).

The State certainly has an interest in facilitating opportunities for parents to resolve ongoing disputes over child custody, parenting time, and other custody issues outside of the courtroom. This provides parents with the opportunity to attempt to come to a mutually agreeable arrangement, which is more likely to accomplish a result that is in the child's best interests. *Murphy v. Murphy*, 196 Kan. 118, 122, 410 P.2d 252 (1966) (noting that State in exercising its *parens patriae* power has duty to act in the best interests and welfare of child). Furthermore, by providing parents with an opportunity to participate in the case management process, the State is seeking to minimize or reduce the need for a time-consuming, burdensome, and fact-intensive hearing. Avoiding the need for a hearing in every child custody dispute allows the State to effectively allocate its judicial resources and to have hearings in cases where a hearing is truly necessary. See *Mathews*, 424 U.S. at 348. But the fact remains that the sole authority to determine child custody and residency rests with the district court. See K.S.A. 60-1610(a)(3); K.S.A. 60-1610(a)(4); *In re D.R.K.*, No. 90,689, 2003 WL 22831935, at *6-7 (Kan. App. 2003) (unpublished opinion). There is nothing in the case management statutory scheme to suggest that a judge is required to abdicate his or her judicial decision making to the case manager. The case manager does not displace the court.

In sum, a weighing of the three *Mathews* factors leads to the conclusion that when the case manager's recommendations materially affects a parent's right to the care, custody, and control of a child and the case manager's report relies upon material facts that are either not supported by specific factual references or are spe-

cifically disputed by a parent, due process requires that the district court conduct an evidentiary hearing prior to ruling on the recommendations. Although this holding may result in courts having busier dockets, the information received at such a hearing will aid the courts in deciding whether the case manager's recommendations are in the best interests of the child and insure that due process, one of the most sacred and essential constitutional guarantees, is provided to the parties. See *O'Keefe,* 235 Kan. at 1027.

*Failure to provide an evidentiary hearing regarding Wray's objections to the case manager's recommendations deprived Wray of due process.*

Applying our holding to the specific facts of this case, we conclude Powers' recommendations changing residential custody from Wray to Hutchison materially affected Wray's care, custody, and control of E.H. Powers' recommendations contained, as their bases, conclusory statements that Wray was denigrating Hutchison to E.H., that Wray's fiancé showed a lack of respect for Hutchison at a joint meeting, that if Wray were to move with E.H., Wray would not be allowed to "love and enjoy" Hutchison, that Wray has "continued to not cooperate or participate in" E.H.'s counseling, and that a move to a new school would be disruptive to E.H. Wray filed an objection to Powers' recommendations. In it she disputed that she had been uncooperative with E.H.'s therapy, denied that she made disparaging remarks about Hutchison to E.H., denied her fiancé was disrespectful to Hutchison, and denied, based on conversations with the school counselor, that a change in school would be detrimental to E.H. She also challenged Powers' objectivity and argued that a change in residential custody would be detrimental to E.H. In addition, Wray asked that a GAL be appointed for E.H.

The tone and content of Powers' subsequent response to Wray's objection can hardly be described as a professional report from a neutral factfinder or facilitator. See K.S.A. 23-1001. Although Powers was not asked to address Wray's request for the appointment of a GAL, nor was she statutorily required to weigh in on the issue, she recommended that a GAL not be appointed because E.H. was adequately represented "by this Case Manager." Powers indicated

that she had conversations with E.H.'s psychologist that factored into her recommendations, although she did not provide any detail or summary of those conversations. Powers further concluded that she "would not write a Recommendation that is detrimental to any child." In support of her assertion that Wray had not participated in E.H.'s therapy, she stated that Wray "has refused multiple times to take [E.H.] to therapy." She also accused Wray of coaching E.H. in what to "say and ask," provided specific examples, and implied that the psychologist agreed with her assessment.

It is clear that Powers' report makes recommendations regarding residential custody which rely upon material facts that are either not supported by specific factual references or are specifically disputed by Wray. Due process requires that Wray be given an adequate opportunity to contest or rebut Powers' claims and recommendations through cross-examination and the presentation of witnesses. Accordingly, we remand the case with directions to conduct an evidentiary hearing on Wray's objections to the case manager's recommendations.

*Motion to remove the case manager.*

Wray also appeals the denial of a hearing on her motion to remove Powers as case manager, claiming that this too denied her of due process. However she fails to present any argument or authorities on this point in her appellate brief. Moreover, she alleges no protected liberty or property interest in the appointment or removal of a case manager that would implicate due process considerations. An issue not briefed by the appellant is deemed waived and abandoned. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 281, 225 P.3d 707 (2010). In addition, failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. See *State v. Berriozabal*, 291 Kan. 568, 594, 243 P.3d 352 (2010). Accordingly, we deem this issue abandoned by Wray.

## WE LACK JURISDICTION TO RULE ON WRAY'S REQUEST FOR CHANGE OF JUDGE

If a party believes that the judge to whom the case has been

assigned cannot afford the party a fair trial, the party may file a motion for change of judge. K.S.A. 20-311d(a). Once such a motion is filed, the judge is required to promptly hear the matter. If the judge refuses to disqualify himself or herself, the party may file an affidavit alleging the specific grounds for disqualification, at which time another judge is assigned to determine if the affidavit is legally sufficient to establish the necessity for disqualification. K.S.A. 20-311d(b).

Wray argues that Judge Pokorny is required to recuse herself from future proceedings in this case because she has demonstrated bias, prejudice, or partiality toward Wray in the proceedings below. However, Wray failed to follow the statutory procedure. She did not file a motion seeking a change of judge as required by K.S.A. 20-311d; instead, she inserted one sentence in her 21-page motion to reconsider that stated "[u]nder K.S.A. 20-311(b) [*sic*] this court should recuse herself from hearing any other proceedings in this case." She did not indicate in the heading of the motion that it was also a motion for change of judge. In her final prayer for relief at the conclusion of the motion to reconsider, Wray did not seek the removal of Judge Pokorny. We find this inadequate to place the district court on notice that Wray was seeking a change of judge. In fact, the district court did not enter any ruling regarding recusal. A party's failure to timely file a motion requesting that the trial judge recuse himself or herself from the proceedings below bars that party from raising the issue on appeal. *State v. Brown*, 266 Kan. 563, 570, 973 P.2d 773 (1999).

Moreover, " '[i]t is a fundamental proposition of Kansas appellate procedure that an appellate court obtains jurisdiction over the rulings identified in the notice of appeal.' " *State v. Coman*, 294 Kan. 84, 90, 273 P.3d 701 (2012). In her notice of appeal, Wray did not indicate she was appealing an order or lack of an order regarding the judge's recusal. She indicated she was appealing the district court's order (1) denying Wray's motion to reconsider; (2) denying Wray's request for hearing on the motion to remove the case manager; and (3) rescinding its order for a hearing on the motion to reconsider. Therefore we lack jurisdiction to entertain any appeal of a motion to change judge.

Reversed and remanded with directions for the district court to conduct an evidentiary hearing on Wray's objections to the case manager's recommendations modifying residential custody of E.H. Wray's remaining claims are dismissed.

Reversed in part, dismissed in part, and remanded with directions.