NOT DESIGNATED FOR PUBLICATION

No. 114,102

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SYLVIA HERNANDEZ,
Mother and Next Friend,
and ISABELLA D. RIDER and EMMA R. RIDER,
Minor Children, by and Through Their Natural Mother,
*Appellees,*

v.

KEVIN VINCENT RIDER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN M.P. O'GRADY, judge. Opinion filed April 15, 2016. Affirmed.

*Kevin Vincent Rider*, pro se appellant.

*Larry C. Hoffman*, of Overland Park, for appellees.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

*Per Curiam*:  Kevin Vincent Rider appeals the district court's modification of his child support obligation for his two minor children after he was terminated from his job. Rider claims the district court erred by denying him due process and by assuming facts not in evidence to impute his income on the child support worksheet as the noncustodial parent. We find the district court did not deny Rider his due process right to a meaningful hearing or abuse its discretion in imputing income to him on the child support worksheet. We affirm.

1

When Rider and Sylvia Hernandez' relationship ended, Rider was ordered to pay child support for their two minor children. Rider filed a motion to modify his child support obligation on October 28, 2014, because his employer terminated him on October 24. The administrative hearing officer granted Rider's motion to modify child support and ordered him to pay a reduced amount of $339 per month effective November 1, 2014. Hernandez appealed the administrative hearing officer's child support order to the district court.

Rider, a lawyer, represented himself before the district court. He was sworn in and given the opportunity to present his motion. Rider indicated he found employment which would begin in August; he was terminated from his last job for "performance." Rider asked the district court to use his current unemployment income to determine his child support obligation. He also asked for a complete abatement of child support during the summer months since he would have the children 50% of the time. Rider explained he was paying child support in another case and listed his efforts to find comparable employment. In response to one of the district court's questions, Rider indicated his license to practice law was inactive. He testified for 28 minutes of a hearing scheduled for 30 minutes. Finally, when asked whether he had anything else, Rider responded in the negative.

Hernandez' attorney spoke for her. He pointed out Rider had a juris doctor, two master's degrees, and a baccalaureate degree in psychology. He also pointed out the median income for a Johnson County attorney was approximately $65,000 per year.

The district court found Rider had been terminated from his previous employment and had been looking for work. It also found he had a juris doctor, two master's degrees, had spent time as a professor, was a qualified mediator, and had been qualified as a

domestic case manager in Sedgwick County. Despite these credentials, Rider accepted employment through Teach for America for a job with an unknown income. The district court questioned whether Teach for America was the best Rider could do, and commented that Rider seemed to be "self-selecting jobs that make less and less make sense." Rider interrupted, saying, "Your Honor, if I might add—," before the district court stopped him, continued its ruling, and concluded:  "Based upon the evidence before me, I don't see any reason why Mr. Rider couldn't be capable of earning somewhere in the neighborhood of $60,000 a year. Frankly, on what I've heard so far, I'm not convinced that he's tried all that hard to find that job." Based on prior child support worksheets on file, the district court imputed Rider's income at $60,000 and made the child support modification retroactive to November 1, 2014. Rider appeals.

ANALYSIS

*Rider's Due Process*

Rider argues his due process rights were denied when the district court failed to give him a complete opportunity to be heard without interruptions. "The fundamental requirements of procedural due process are notice and the opportunity to be heard at a meaningful time and in a meaningful manner." *In re Marriage of Hutchison*, 47 Kan. App. 2d 851, 855, 281 P.3d 1126 (2012). When reviewing a due process claim, an appellate court must first determine if a protected liberty or property interest is implicated, and, if so, must determine the nature and extent of the process due. 47 Kan. App. 2d at 855. "A due process violation occurs only when a party is able to establish that he or she was denied a specific procedural protection to which he or she was entitled." 47 Kan. App. 2d at 855.

Here, the district court did not violate Rider's due process. Rider cannot establish he was denied the opportunity to be heard. At the hearing, Rider was sworn in and given

3

the opportunity to present his motion. While the district court asked questions of Rider, he had the opportunity to present his evidence. The hearing was scheduled for 30 minutes, and Rider spoke for approximately 28 minutes. He told the court about the job he had lined up for the beginning of the school year in August, and he asked the district court to modify his child support based on his unemployment income. In response to questioning from the court, Rider explained he was still paying child support in another case and listed his efforts to find comparable employment.

When asked whether there was anything else Rider wanted the district court to know, Rider began arguing he should not have to produce information related to two sets of interrogatories. From the transcript, it appears Rider made all the arguments he intended to make regarding the modification of child support and when asked again whether he had anything else, Rider responded in the negative. Rider complains he was summarily denied when he attempted to "correct the judge for numerous factual mistakes." However, the exchange he cites to occurred while the district court was announcing its ruling.  Rider had the opportunity to speak and present his case prior to the judge's ruling.

Rider also argues the district court prevented him "from speaking [his] point 12 times during the hearing, which represented a significant part of [his] testimony." However, Rider does not cite to where in the record the district court prevented him from speaking. A review of the record indicates the district court did interrupt to ask questions of Rider; however, many of the district court's questions of Rider were to clarify his statements or to elicit more information. A review of the record indicates the district court only prevented Rider from discussing discovery issues and from interrupting the district court's ruling.

We observe no violation of Rider's due process by failing to provide him an opportunity to be heard. Rider presented evidence for 28 minutes. Even though the

4

district court would not allow Rider to interject during its ruling, Rider had a prior opportunity to testify at length. The district court provided Rider an opportunity to be heard in a meaningful way and did not violate his due process rights.

*Imputed Income to Rider*

Rider argues the district court erred when it imputed $60,000 in income to him because the issue was not properly before the court. He also argues there was no evidence he was underemployed or attempting to avoid paying child support. In contrast, Hernandez argues the imputation of income was at issue because the district court was hearing Rider's motion to modify child support.

### *Imputed Income Correctly Assessed*

As a preliminary matter, Rider argues the imputation of income was not properly before the district court. He argues the only issue before the administrative hearing officer was whether to temporarily reduce child support since he was on unemployment, and Hernandez raised the issue for the first time in her petition for review to the district court. Appellants have the burden to provide a record sufficient to support their arguments. *Nold v. Binyon*, 272 Kan. 87, 96, 31 P.3d 274 (2001). Rider's motion to modify child support was not included in the record on appeal, neither was Hernandez' response (if any) to his motion or her petition for review to the district court. Rider has not provided a record supporting this claim, so this argument fails. The burden is on the party making a claim to designate facts in the record to support that claim; without such a record, the claim of error fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013).

Rider also argues the district court erred by imputing his income at $60,000 because there was no evidence he was attempting to avoid child support or was

5

underemployed. Appellate courts review a district court's order determining the amount of child support for abuse of discretion. *In re Marriage of Wiese*, 41 Kan. App. 2d 553, 559, 203 P.3d 59 (2009). However, interpretation of the Kansas Child Support Guidelines (Guidelines) is subject to unlimited review. *In re Marriage of McCollum*, 30 Kan. App. 2d 651, 652, 45 P.3d 398 (2002). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

Pursuant to the Kansas Child Support Guidelines (Guidelines), income may be imputed to the parent without primary residency in appropriate circumstances. Guidelines § II.F (2015 Kan. Ct. R. Annot. 114). The Guidelines provide a nonexhaustive list of circumstances warranting imputation of income, including:  when a parent is deliberately unemployed or underemployed, is terminated for misconduct, or receives a company car, free housing, or other reductions in living expenses as a result of employment. Guidelines § II.F. Though income is often imputed in cases of deliberate unemployment or underemployment, imputation of income is not limited to these circumstances and whether to impute income to the noncustodial parent is a discretionary call by the district court.

The district court's decision to impute income was not an abuse of discretion. At the hearing, the district court asked Rider for a list of jobs he had applied for while on unemployment. Rider did not have his unemployment log with him. When pressed about where he had applied, Rider replied:

> "Oh, gosh. Companies. I've applied for risk management positions. I've applied for 7-Eleven management positions. I've applied to anywhere from high-dollar jobs to low-dollar jobs. Vice-president of numerous -- I mean, there's been so many jobs, Your Honor, it's a flurry of which exact ones. But it's been a broad range. I targeted a broad range. I targeted management, I targeted hospital, a few legal, and whatever came up

6

through numerous job sites that I have. I get about 10 emails a day, and I look at those. And most job efforts these days are online so that's where it is."

Rider only identified "7-Eleven" by name when discussing the companies he had applied to and did not identify any specific jobs. In addition, Rider accepted employment with Teach for America without knowing how much he would be paid; he only knew the job would pay between $32,000 and $38,000 per year. Rider would be making less than half of his previous salary and was not scheduled to begin until the end of August, nearly 4 months after the hearing.

Interestingly, Rider has a juris doctor and two master's degrees. He informed the district court he used to handle child support enforcement as an attorney. When questioned by the district court, Rider acknowledged his law license was inactive but made no attempt to explain why he had not reactivated his license with his recent unemployment. Rider did not support his testimony regarding his job search with any documentation and was not able to respond to the district court's questions with specifics. Rider made no attempt to argue why Teach for America was the best employment he could find. The district court was not convinced Rider had tried very hard to find employment equal to his qualifications. The district court's decision to impute income was not arbitrary, fanciful, or unreasonable. Therefore, the district court did not abuse its discretion when it imputed income to Rider based on what the child support worksheets in the file reflected his income was in the past.

*No Facts Assumed*

Rider argues the district court abused its discretion by assuming facts not in evidence. Specifically, Rider argues the district court erred when it stated Rider "has historically worked and had a pretty good income," and was "making well above 60 before." Rider also argues there is no evidence supporting the district court's assertion he "seems to be self-selecting jobs that make less and less."

7

Hernandez presented evidence based on Rider's resumé. Though Rider's resumé was not included in the record on appeal, the district court appeared to summarize his resumé in its findings. Further, during the hearing, the district court indicated it was looking at its old orders. According to the child support worksheets attached to the district court's previous orders, Rider had a gross annual income of more than $71,000 in 2012 and would have had a gross annual income of more than $78,000 in 2014 had he not been terminated for performance issues.

Likewise, there is evidence supporting the district court's assertion Rider seemed to be selecting jobs that made less and less. Despite having a juris doctor and two master's degrees, Rider accepted a teaching position without knowing exactly how much he would be paid. Rider did testify the position paid between $32,000 and $38,000—less than half of the income he made prior to his termination—and would not start for nearly 4 months after the hearing. The record on appeal supports the district court's decision, and its decision was not arbitrary, fanciful, or unreasonable.

*Effective Date of the Modification*

Rider also appears to argue the district court erred when it modified his child support obligation retroactive to the first day of the month after he filed his motion. Rider fails to recognize K.S.A. 2015 Supp. 23-3005(b) specifically gives the district court that discretion when it provides: "The court may make a modification of child support retroactive to the first day of the month following the filing of the motion to modify." Ironically, Rider had no objection when the hearing officer reduced his obligation and made it effective on the first of the month following the filing of his motion on November 1, 2014. The retroactive start date was properly applied by the district court, and Rider's objection is without merit.

Affirmed.