NOT DESIGNATED FOR PUBLICATION

No. 115,829

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of:
KENNETH LANGLEY,
*Appellant*,

and

COURTNEY LANGLEY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed April 28, 2017. Affirmed.

*Douglas C. Cranmer* and *Thomas C. Witherspoon*, of Stinson, Lasswell & Wilson, L.C., of Wichita, for appellant.

*W. Thomas Gilman*, *Patricia A. Gilman*, *Travis M. Pfannenstiel*, and *Bradley J. Schlozman*, of Hinkle Law Firm, L.L.C., of Wichita, for appellee.

Before GARDNER, P.J., ATCHESON, J., and STUTZMAN, S.J.

ATCHESON, J.: Kenneth Langley appeals related rulings of the Sedgwick County District Court denying him relief in the latest chapter of an ongoing child custody dispute with Courtney Langley, his former wife, and awarding attorney fees to Courtney. We find no basis to disturb those rulings and, therefore, affirm the district court. We also take up and deny Courtney's motion for attorney fees in responding to Kenneth's appeal.

1

Kenneth and Courtney married in July 2007 and had J.L., their only child, in May 2008. In July 2009, Kenneth filed for divorce, and Courtney filed an answer and counter-petition. The district court granted a divorce decree in September 2010 and later that year entered a judgment establishing child custody and parenting time and reconciling the couple's financial rights and obligations arising from the marriage. Both during and since the divorce proceedings, child custody has been a festering sore between Kenneth and Courtney. Early on, the district court assigned a case manager to help soothe the rawness. Kenneth and Courtney were working with at least their second case manager when this particular disagreement flared up. We dispense with a prolonged introductory narrative outlining the contentious history pertaining to the postdivorce parenting of J.L. Rather, we turn to the specific issues Kenneth has raised and provide focused factual and procedural summaries for them.

KENNETH LANGLEY'S POINTS ON APPEAL

*No Evidentiary Hearing on Motion for Indirect Civil Contempt*

In February 2016, Kenneth filed a motion requesting the district court order Courtney to show cause why she should not be held in indirect contempt for violating the provisions of the judgment governing child custody and parenting. The motion also requested that the district court grant him sole legal custody of J.L., replacing the joint legal custody that had been in effect. Kenneth signed a 2 1/2-page, single-spaced affidavit in support to the motion and tendered a 2-page narrative chronology of events with the affidavit. See K.S.A. 2016 Supp. 20-1204a(a) (court may issue show cause order upon motion accompanied by affidavit "specifically setting forth the facts constituting the alleged violation").

The judgment included these provisions regarding the parenting of J.L.: (1) each parent should provide 14 days' notice to the other of any medical or dental appointments

2

for the child, except for emergencies; (2) each parent should provide the other 14 days' notice if either "[is] leaving town with the minor child and shall provide the dates, itinerary and telephone contact information"; and (3) "[e]ach parent shall have the right to make major decisions affecting the child [list of examples omitted] and any decisions affecting the child which the Court finds to be in the best interest of the minor child." In the judgment, the district court retained jurisdiction "to resolve" joint parenting decisions on which Kenneth and Courtney disagreed.

In his motion and the supporting documents, Kenneth cited specific instances in which he asserted Courtney violated those duties. He cited occasions when he says Courtney gave him less than 14 days' notice of "leaving town" with J.L. and represented he received no notice for more than 100 excursions. He cited one medical appointment for which Courtney gave virtually no notice. And he complained that Courtney had J.L. baptized at the church she attended without consulting him or giving him any notice of the baptismal ceremony.

Courtney responded to the motion through her lawyer. After reviewing the submissions and hearing argument from the lawyers for Kenneth and Courtney, the district court declined to find Courtney in contempt. Kenneth contends the district court erred in failing to hold an evidentiary hearing.

Contempt of court may be either direct or indirect. Direct contempt entails contumacious or disrespectful conduct in the court's presence. Indirect contempt occurs outside the court's presence and typically involves the willful refusal to obey a court order, a form of contumacy. Either may be treated as a civil contempt or a criminal contempt in fashioning a remedy. Civil contempt aims to compel a party to abide by the terms of a court order going forward. Upon a finding of civil contempt, a court may jail a particularly recalcitrant party for an indefinite period until he or she agrees to comply with the order. The court may impose a periodic fine—daily or weekly, for example—or

3

some other coercive sanction until the party complies. Criminal contempt punishes a party for a past violation of an order with a fixed fine or jail sentence as a punitive sanction. See *In re Marriage of Shelhamer*, 50 Kan. App. 2d 152, 155-56, 323 P.3d 184 (2014) (discussing direct and indirect contempt and civil and criminal remedies). The Kansas Legislature has codified procedures governing judicial determination of indirect contempt. K.S.A. 2016 Supp. 20-1204a.

Kenneth's motion outlined circumstances that could only be indirect contempt, since whatever Courtney did took place outside the district court's presence. But the motion wasn't explicit about the remedy as one for civil or criminal contempt. The supporting papers allude to civil contempt. And Kenneth's appellate brief refers to civil contempt. We, therefore, presume the appeal concerns civil rather than criminal contempt. A district court's denial of one party's request for a judgment of criminal contempt against another party is not an appealable order. *State ex rel. Sanborn v. Bissing*, 210 Kan. 389, 394-96, 502 P.2d 630 (1972). Conversely, the denial of a request for civil contempt may be appealed. *American Trust Administrators, Inc. v. Sebelius*, 267 Kan. 480, 488, 981 P.2d 248 (1999).

In *American Trust Administrators*, the Kansas Supreme Court held a district court's finding that a party had not committed indirect civil contempt should be reviewed on appeal for abuse of judicial discretion. 267 Kan. at 489. A district court exceeds that broad discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproved factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).[*]

4

[*]An appellate court reviews an affirmative finding of contempt without deference to the district court but examines the remedy for abuse of discretion. *In re M.R.*, 272 Kan. 1335, 1342, 38 P.3d 694 (2002); *Shelhamer*, 50 Kan. App. 2d at 154-55. The district court's determination of relevant facts has to be supported by substantial evidence with due regard on appeal for credibility determinations. Heightened appellate review of an affirmative finding of contempt has logical underpinnings. Typically, a district court judge will make a contempt determination with respect to his or her own order. So the conclusion that a party's conduct should *not* be treated as contempt ought to be afforded great weight on appeal. The court issuing an order is in the best position to say that particular conduct conforms to that order—or, more precisely, doesn't violate it in a way rising to contempt. See *Johnson v. Johnson*, 11 Kan. App. 2d 317, 320, 721 P.2d 290 (1986) (district court properly declines to find party in contempt where conduct is "not willful to such a degree as to amount to contemptuous disobedience"). Appellate deference to that call reflects an entirely justifiable approach. At the same time, an affirmative finding of contempt necessarily triggers some form of sanction. Unlimited appellate review of the grounds for the contempt shields the contemnor from a district court determination that may be rooted more in a visceral reaction (or overreaction) to conduct perceived to be disrespectful than in a studied evaluation of the circumstances.

Here, Kenneth specifically complains the district court did not hold an evidentiary hearing in declining to find Courtney in indirect civil contempt. In reaching its decision, the district court relied on the detailed representations Kenneth made in his motion to show cause, his affidavit, and the accompanying narrative. The district court assumed those representations to be true—giving Kenneth the best possible factual foundation. In doing so, the district court implicitly presumed that Courtney acted intentionally rather than negligently. For example, the district court treated Courtney's alleged failures to give notice at all as deliberate decisions rather than inadequate attempts. On appeal, Kenneth does not point to more or different evidence he would have presented during an evidentiary hearing. He does suggest such a hearing would have accentuated the willfulness of Courtney's actions.

Nothing in K.S.A. 2016 Supp. 20-1204a, governing indirect contempt, mandates that a district court hold an evidentiary hearing simply because a party has filed a motion requesting a show cause order. The statute affords a district court the authority to decline to issue a show cause order after reviewing the motion and supporting materials. K.S.A.

5

2016 Supp. 20-1204a(a) ("the court . . . *may order* a person alleged to be guilty of indirect contempt . . . to appear and show cause why such person should not be held in contempt" [emphasis added]). Even if a district court convenes a hearing, the statute itself does not require an evidentiary proceeding. Where, as here, a district court augments the written submissions with argument from the lawyers, it may then decline to find contempt without taking evidence, so long as it accepts the factual representations of the moving party. If those representations do not warrant a contempt finding, the district court can so rule. In this case, we need not delve into an accused contemnor's request for an evidentiary hearing and the due process rights that may be implicated. A district court may well be required to honor that request before imposing a contempt sanction. See *In re J.T.R.*, 47 Kan. App. 2d 91, 100-01, 271 P.3d 1262 (2012) (contemnor in criminal contempt proceeding has due process right to trial and other procedural protections); *Pryweller v. Pryweller*, 218 Ill. App. 3d 619, 628-29, 579 N.E.2d 432 (1991) (In an indirect civil contempt proceeding, "the offender is entitled to the requirement of due process of law[,] . . . including an evidentiary hearing.").

On the narrow issue, then, we see no error in the district court's failure to hold an evidentiary hearing before declining to find Courtney in indirect civil contempt. In his appellate argument, however, Kenneth expands the point to challenge the district court's underlying determination against a contempt finding—essentially making an argument that the district court abused its discretion.

What we have said so far shows the district court both understood the factual circumstances, since it accepted Kenneth's representations for purposes of considering his motion, and applied the appropriate legal framework. The remaining ground supporting an abuse of discretion would require us to find that no other district court would have ruled the same way on this record. We are unwilling to make so harsh an assessment. Far from it.

6

Several times, Courtney gave Kenneth less than 14 days' notice when she took J.L. on trips of more than a day. According to Kenneth's assertions, even then, he received 7 to 10 days' notice, which the district court treated as substantial compliance. We find no fault with such a characterization. Kenneth asserted he received grossly inadequate notice of one medical appointment for J.L. The situation did not involve an emergency. Courtney apparently was able to get J.L. in to see the doctor the same day she called to schedule a visit. She promptly notified Kenneth. The district court declined to view that as contemptuous disobedience of the judgment. We are comfortable other district courts would have taken a like view.

Kenneth alleged that Courtney repeatedly gave him no advance notice of "leaving town" with J.L., thereby violating the judgment. He cited Courtney's regularly taking J.L. to services at a church in Andover. We understand Courtney and Kenneth lived in Wichita. Andover is roughly 15 miles east of Wichita. In making that allegation, Kenneth relied on interpreting the phrase "leaving town," as used in the judgment, to mean something approximating "traveling beyond the corporate limits of the City of Wichita." We can't say whether his premise more exquisitely tortures common sense or the everyday understanding of the term "leaving town," but it certainly does both. In approving the language in the judgment, the district court could not have meant that either parent had to give the other 14 days' notice if he or she simply drove J.L. beyond the city limits of Wichita. Would that include driving on Douglas Avenue through Eastborough? Not likely. Nor would it include going to church in Andover. The notion defies common sense. The phrase itself connotes a trip that includes a stay of at least 1 night away from home. The requirement in the judgment that the parent leaving with J.L. provide the *dates* and itinerary of the trip certainly suggests as much. Going from Wichita to somewhere and returning the same day would involve a single date. So would leaving and reentering the corporate limits of Wichita in a single car ride. The district court would not stand alone in finding Kenneth's allegation did not evince contemptuous disrespect for the judgment on Courtney's part.

Courtney's failure to discuss with Kenneth or notify him of J.L.'s baptism presents a tougher question. The factual assertions show that Courtney deliberately kept information about J.L.'s baptism from Kenneth and that he found out about the ceremony later, more or less by happenstance. Everyone presumes the baptism to be a "major decision" of the sort the two were to confer about. We have no reason to doubt that characterization of the event. Baptism is generally considered a profound ritual marking the participant's acceptance of the fundamental tenets of Christianity, as reflected in the Gospel of that denomination and church. Although Kenneth mentions that he thought J.L. too young, at 7 years of age, to be baptized, his principal complaint lies in his having missed "a singular occurrence in the life of [J.L. that] cannot again be experienced in either his life or the life of his child." But Kenneth does not claim that J.L.'s attendance at the Andover church or her baptism were emotionally or morally debilitating to her or were otherwise contrary to her best interests. Kenneth plainly knew J.L. was attending the church and voiced no objection.

Based on the factual context the district court considered—essentially Kenneth's assertions in support of his motion—Courtney violated the parenting orders in the judgment in the way she handled J.L.'s baptism. But any given violation of an order does not require the district court impose a contempt sanction on the violator, even if another party demands it. A district court's volitional determination not to sanction, based on the particular circumstances, exemplifies judicial discretion and its exercise. As Kenneth correctly pointed out, J.L.'s baptism was unique and would not be replicated, so a civil contempt sanction—designed to compel future compliance with a court order—presents an unfocused remedy for the violation. We cannot say the district court abused its discretion in declining to take that step. The district court did direct that the case manager take up the situation with Kenneth and Courtney. Case management offers a forum readily directed toward conciliation and the fostering of more positive modes of interaction going forward. In at least some cases, those efforts may be more productive in

8

the long run than coercive judicial action aimed at one party. The district court had the latitude to make that call.

In sum, we find no abuse of judicial discretion or other grounds for reversing the district court's refusal to find Courtney in contempt of court or in declining to hold an evidentiary hearing on the way to making that ruling.

*No Evidentiary Hearing on Case Manager's Recommendations*

The case manager recommended several modifications and clarifications of the parenting provisions of the judgment in an effort to smooth some of the barbed edges to the interaction between Kenneth and Courtney. The district court approved those recommendations at the same hearing it considered Kenneth's request that Courtney be held in contempt of court. Kenneth complains that the district court deprived him of due process by ruling on the recommendations based on the argument of the lawyers and without hearing evidence. Especially given the limited scope of the changes, we find no error on this point.

Although Kenneth objected in the district court to taking up the case manager's recommendations, his objection did not invoke due process in so many words. Because the claim rests on a constitutional right, we opt to put any concerns about preservation of the issue aside in favor of addressing the merits.

A parent has a fundamental right to raise his or her child that is protected as a liberty interest in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). The government may materially restrict that liberty interest only for good reason after affording the parent adequate procedural due process protections. Procedural due process,

9

in turn, entails a flexible right to be heard in a meaningful way and at a meaningful time, tailored to the nature of the government action and the protected interest at stake. *Mathews v. Eldridge*, 424 U.S. 319, 349, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (nature and extent of the due process protections must be calibrated to the significance of the interest at stake); *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.").

In *In re Marriage of Hutchison*, 47 Kan. App. 2d 851, Syl. ¶ 1, 281 P.3d 1126 (2012), this court held that a party has a constitutional due process right to an evidentiary hearing in the district court to challenge allegedly mistaken factual bases for a case manager's decisions that substantially impair the party's right to parent a child. The court, however, recognized that some actions by a case manager would not materially diminish the constitutional liberty interest of a parent and, therefore, would trigger no (or minimal) procedural due process protections. 47 Kan. App. 2d at 858.

Here, the case manager's recommendations did not adversely affect either parent's liberty interest in raising J.L. Nor did Kenneth dispute any factual premise upon which the recommendations were based.

The case manager recommended language clarifying the "leaving town" provision of judgment to make excruciatingly clear that the notification obligations of either parent applied to overnight stays at places more than 20 miles from Wichita. The recommendation did not inhibit either parent's substantive rights related to J.L. and merely added specificity to a notification obligation that had been in place. The change in no way implicated either parent's liberty interests.

10

Earlier, the case manager had agreed to allow the parties to videotape their interactions to discourage untoward behavior. She did so "with extreme hesitation" in response to Kenneth's complaints about Courtney's rude conduct. Courtney had since complained that Kenneth used the videotaping as a means of intimidating her. The case manager wanted a court directive that Kenneth videotape "discreetly" and that he not show those recordings to J.L. Again, the recommended limitations on videotaping do not implicate constitutionally protected parenting rights.

Finally, the case manager recommended that neither parent bring his or her significant other to J.L.'s medical appointments. The significant others, of course, were not J.L.'s biological or adoptive parents and had no authority to act for her. Accordingly, they had no legal need to be present. Courtney had complained that the presence of Kenneth's significant other in the examination room and during physician consultations was disruptive and posed confidentiality problems. The case manager's recommendation had no effect on the rights of Kenneth or Courtney to participate in medical decisions for J.L. or to be present at the child's appointments with healthcare providers. The recommendation did not implicate either parent's liberty interest.

Kenneth also sought to challenge the case manager's recommendation that Courtney not be sanctioned for failing to him give required notice of a particular medical appointment. The case manager declined to do so because Courtney did notify Kenneth and he attended J.L.'s appointment. The issue of sanctions, however, does not bear directly on or diminish in any way Kenneth's constitutional right to parent J.L. So he had no constitutional due process right to an evidentiary hearing in the district court regarding the recommendation.

In short, none of the case manager's recommendations impaired Kenneth's constitutional right to parent J.L. In turn, Kenneth had no constitutionally protected due process right to an evidentiary hearing on the recommendations—a determination that is

11

consistent with both general due process principles and the particular application of those principles to case management, as recognized in *Hutchison*. We, therefore, reject Kenneth's point and affirm the district court.

*No Referral of Requested Change in Custody to Case Manager*

Following the denial of his show cause motion, Kenneth filed a motion requesting that he be given sole legal custody of J.L. He essentially cited the same grounds he relied on in asking for the contempt finding against Courtney. He also filed a motion for reconsideration of the court's contempt ruling. The district court denied both motions. (As we indicated, Kenneth also sought a change in legal custody as a remedy for Courtney's alleged contempt of court.) On appeal, Kenneth contends the district court was obligated to refer the request for a change in custody to the case manager and the failure to do so amounted to reversible error. We reject the contention as inconsistent with the purpose of case management and the statutory regulation of custody orders.

A district court may appoint a case manager to act as a neutral to assist parents in fashioning agreements on child custody and other parenting issues. K.S.A. 2016 Supp. 23-3507. The process is typically used when the parents have been unable to come to reasonable arrangements on custody matters and their inability to agree has provoked ongoing friction, often resulting in serial court filings laced with petty or histrionic accusations. See K.S.A. 2016 Supp. 23-3508(a), (b); *Marriage of Hutchison*, 47 Kan. App. 2d at 856-57. Basically, case management is a tool that may, but need not, be deployed to deescalate frayed emotions that can accompany child custody issues and to bring the parties together in a controlled environment to facilitate structured communication and negotiation in an effort to resolve disagreements over those issues. If the parties have an assigned case manager, nothing in the statutory scheme requires the district court to refer a particular motion or request to the case manager. K.S.A. 2016 Supp. 23-3507 *et seq.*

12

As stated in K.S.A. 2016 Supp. 23-3219(a), a district court may consider modifying a final custody order when a party files a verified motion or a motion accompanied by an affidavit setting out facts alleged to warrant the change. The district court may deny the request if the factual allegations fail to establish a prima facie case for a change. If the allegations are sufficient, the district court should then try the "factual issues" and rule on the motion. K.S.A. 2016 Supp. 23-3219(a). The statute does not require the involvement of a case manager at any stage in the process.

In sum, case management is a means to head off disagreements about child custody and to expedite the resolution of those disagreements when they arise. The district court, however, retains full authority to promptly address particular motions or other disputes even after the parties have been assigned a case manager and to do so without first engaging the case management process. To hold otherwise would unduly constrain a district court's judicial authority and in many instances would needlessly prolong the decisionmaking process. To be plain, a district court can decide a motion to modify child custody without referring it to a case manager for consideration. Kenneth's argument to the contrary would transform case management from a tool to be used to good effect in many situations into a mandatory bureaucratic function that would be no more than an empty exercise in many other situations. District courts retain the discernment to assess a given circumstance and to make a studied determination on the utility of case management. We reject Kenneth's point and affirm the district court's denial of his motion to modify custody.

*Award of Attorney Fees to Courtney*

After denying Kenneth's motions seeking a contempt order against Courtney and a change in child custody, the district court granted Courtney's request for attorney fees under K.S.A. 2016 Supp. 23-2715 and awarded her $3,000. Kenneth appeals that award.

13

As provided in K.S.A. 2016 Supp. 23-2715, a district court may grant either party costs and attorney fees "as justice and equity require" in a divorce action or later proceedings related to child custody. Accordingly, a district court has broad statutory discretion to grant attorney fees. And we essentially review an award based on K.S.A. 2016 Supp. 23-2715 for abuse of judicial discretion. *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 972-73, 255 P.3d 34 (2011) (construing identical language in predecessor statute); *In re Marriage of Barbee*, No. 115,134, 2017 WL 1198496, at *7-8 (Kan. App. 2017) (unpublished opinion).

The outcome of a legal dispute does not dictate a fee award under K.S.A. 2016 Supp. 23-2715. In other words, K.S.A. 2016 Supp. 23-2715 is not a fee-shifting statute requiring an award to a prevailing party. Nor does it automatically allocate attorney fees to a party for having to respond to frivolous motions or arguments. Rather, the district court may take account of the overall circumstances and in particular the comparative financial ability of the parties to pay attorney fees and whether a legally questionable motion has been filed against the party substantially less able to absorb those expenses. See *Dunn v. Dunn*, 3 Kan. App. 2d 347, Syl. ¶ 3, 595 P.2d 349 (1979) (When considering a statutory award of attorney fees in domestic relations matter, the district court "must consider . . . the need of one party, weighed against the financial ability of the other to pay."). If a district court finds an award of attorney fees to be appropriate in light of those considerations, it should apply the criteria outlined in Rule 1.5(a) of the Kansas Rules of Professional Conduct (2017 Kan. S. Ct. R. 292) to determine the amount to be awarded. *Marriage of Strieby*, 45 Kan. App. 2d at 973.

The district court offered what might be characterized as nonspecific findings supporting the attorney fee award to Courtney. The findings show the district court considered the circumstances but do not detail precise reasons for the ruling. We may, however, presume a district court has made sufficient findings in the absence of an

14

objection from the aggrieved party for more or better findings. See *Hill v. Farm Bureau Mut. Ins. Co.*, 263 Kan. 703, 706, 952 P.2d 1286 (1998); *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 941, 381 P.3d 490 (2016) (applying presumption of adequate findings to attorney fee request in postdivorce dispute over maintenance). The presumption undercuts Kenneth's argument, since he did not ask the district court to clarify its ruling.

In addition, Kenneth contends the billing records Courtney's attorney submitted to the district court in support of the fee request were too generic to permit an award. He says the records neither described the work done with particularity nor documented that the work related to the specific matters before the district court. But Kenneth concedes those documents are not in the record on appeal. We cannot make a reasoned review without the billing records and, therefore, reject that ground for reversing the fee award. An appellant must furnish a record on appeal sufficient to consider the points raised and to show a material error. *Kelly v. VinZant*, 287 Kan. 509, 526, 197 P.3d 803 (2008). Kenneth has not done so in this respect.

We have been shown no error in the district court's award of attorney fees to Courtney and, therefore, affirm that ruling.

COURTNEY LANGLEY'S MOTION FOR ATTORNEY FEES ON APPEAL

Courtney has timely filed a motion requesting we assess against Kenneth the attorney fees she incurred in responding to this appeal. As provided in Supreme Court Rule 7.07(b), (c) (2017 Kan. S. Ct. R. 50), this court may grant attorney fees related to an appeal if the district court had the authority to award fees or upon finding the appeal (or some portion of it) to be frivolous. Courtney relies on both grounds and has supported her request for $13,291.50 with invoices from her lawyers.

15

A point raised on appeal must be devoid of merit to be deemed frivolous for purposes of assessing the appellee's attorney fees against the appellant. See *Peoples Nat'l Bank of Liberal v. Molz*, 239 Kan. 255, 257, 718 P.2d 306 (1986) (court defines "frivolous appeal" as one presenting nothing more than a question "readily recognized as devoid of merit in that there is little prospect that it can ever succeed"). The claim must be without so much as a colorable basis to sink to that level. Although Kenneth's argument in the district court and on appeal about the meaning of the "leaving town" provision in the judgment defies good sense and might well be labeled frivolous, he asserted other positions that were not. We mention the lack of notification about J.L.'s baptism as an example. Kenneth's legal point about the baptism presented at least a colorable issue in the district court. And we are not prepared to say the point devolved into frivolousness in this court because appellate review—and reversal— depended upon establishing an abuse of judicial discretion. See *In re Marriage of Bos*, No. 109,850, 2014 WL 1796155, at *5 (Kan. App. 2014) (unpublished opinion) (court rejects rule that "[an] unsuccessful appeal in the face of an abuse of discretion standard ought to require the appellant to pay the appellee's attorney fees").

At least a portion of Kenneth's appeal could not be characterized as frivolous. But the billing records Courtney has submitted in support of her fee request do not distinguish among the arguments by showing the time her lawyers devoted to each of them and, thus, the fees she incurred. Rather, the billing entries simply state an amount of time devoted to undifferentiated work on the appellate brief. We have no way of allocating the work and fees to specific arguments or issues. In this respect, Courtney presented us with an all-or-nothing request for fees in an appeal involving multiple issues. Because Kenneth's appeal was not wholly frivolous and Courtney has not provided us with a way to reasonably allocate the fees she paid between what might be frivolous and what wasn't, we cannot grant her motion under Rule 7.07(c). *Cf. DeSpiegelaere v. Killion*, 24 Kan. App. 2d 542, Syl. ¶ 1, 947 P.2d 1039 (1997) (When an action combines claims allowing attorney fees

with those that don't, the party seeking fees must "segregate the work" done on the respective claims so the award covers only those permitting fees.).

Courtney alternatively relies on K.S.A. 2016 Supp. 23-2715 and argues she should be granted her attorney fees for this appeal in the interests of justice and equity. We have already outlined the considerations that go into finding an award to be appropriate under K.S.A. 2016 Supp. 23-2715. In her request to this court, Courtney has not endeavored to show the attorney fees she incurred caused her a significant financial hardship or that she was significantly less able financially than Kenneth to bear the costs, including attorney fees, associated with the motions he filed. Absent that showing, we are not prepared to rely on K.S.A. 2016 Supp. 23-2715 to grant Courtney's motion. See *In re Marriage of Lynn*, No. 114,154, 2016 WL 3856630, at *3 (Kan. App. 2016) (court denies motion for attorney fees on appeal based on K.S.A. 2016 Supp. 23-2715 because movant "has not shown that shifting her attorney fees . . . is necessary to accomplish financial equity").

The rulings of the district court are affirmed, and, for the reasons stated, we deny Courtney's motion for attorney fees on appeal.